UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
ANTHOINE PLUNKETT,                      )
)
Plaintiff,                 )
)
v.                      )        Civil Action No. 11-0341 (RWR)
)
DEPARTMENT OF JUSTICE,                  )
)
Defendant.                 )
_____ )

MEMORANDUM OPINION AND ORDER

In this civil action, plaintiff seeks to compel the Executive Office for United States

Attorneys ("EOUSA") to disclose "all non-exempt records" responsive to his request brought

under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Compl. [Dkt. # 1]; Am.

Compl. [Dkt. # 27]. Defendant moves for summary judgment under Rule 56 of the Federal

Rules of Civil Procedure based on its release of records.[1] Upon consideration of the parties'

submissions and the relevant parts of the record, the motion will be granted in part and denied in

part.

_____

[1] Plaintiff's amended complaint, which is substantially the same as the initial complaint, was
deemed filed by Order of December 20, 2011 [Dkt. # 26]. Because the amended complaint
presents additional arguments but no new claims, defendant was given until January 18, 2012, to
file any supplement to its pending motion for summary judgment to address the amended
complaint. Defendant opted not to file a supplement, as was its right. Thus, the plaintiff's
motion for a writ of mandamus to compel the defendant to file a supplement [Dkt. # 28] will be
denied, and the defendant's pending summary judgment motion will be treated as one directed at
the amended complaint.

BACKGROUND

The relevant facts are as follows.  By letter dated May 12, 2008, plaintiff requested from EOUSA "copies of any and all records . . . in whatever format . . . that makes [sic] reference to me or relates [sic] to me under my name and/or identifier assigned to my name."  Declaration of John F. Boseker ("Boseker Decl.") [Dkt. # 16-5], Ex. A.  Plaintiff stated that he was "[m]ore specifically . . . seeking information generated and/or retained by your agency as a result of the homicide of 'Tyree Nathaniel Wimbush', that occurred on or about July 22, 1999, in the City of Danville, Virginia."  *Id.*  Plaintiff requested that his "approval" be sought for "any expenses in excess of $300.00 . . . ."  *Id.*  In response to EOUSA's subsequent acknowledgment letter dated June 5, 2008, *id.*, Ex. B, plaintiff returned a form EOUSA had included to revise his request "to try to reduce fees," stating that he was limiting his request to  "[a]ny and all (statements and investigative) information pertaining to me from January 1st of 1999 up until the present," and again specifying that he sought information pertaining to the Wimbush homicide "within this time frame."  *Id.*, Ex. C (parenthesis in original).

By letter of May 8, 2009, EOUSA purported to release to plaintiff 178 unredacted pages and 48 redacted pages of information.  *Id.*, Ex. H.  EOUSA withheld 305 pages in full and invoked FOIA exemptions 3, 6, 7(C), 7(D), and 7(F), *see* 5 U.S.C. 552(b), and Privacy Act exemption (j)(2), *see* 5 U.S.C. §552a, as the bases for its withholdings.  *Id.*, Ex. H.  In addition, EOUSA referred other records that "may or may not be responsive to [plaintiff's] request" to the United States Marshals Service and the Bureau of Prisons ("BOP") for their review and responses directly to plaintiff.  *Id.* at 2.  Plaintiff unsuccessfully appealed EOUSA's determination to the Office of Information Policy ("OIP"), which added exemption 5 as a basis for withholding information.  *See id.*, Ex. L.

Plaintiff filed this action on February 9, 2011.  Thereafter, on June 2, 2011, EOUSA released to plaintiff an additional 36 pages of information, 35 of which contained redactions made pursuant to FOIA exemptions 3, 5, 7(C), 7(D), and 7(F).  *Id.*, Ex. N [Dkt. # 21-2].  In preparing a *Vaughn* index in support of the instant summary judgment motion*, see Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973), Boseker determined that EOUSA had miscalculated the initial number of released pages and, accounting also for the additional release in June 2011, clarified that EOUSA released 170 pages in full and 83 pages in part, and withheld a total of 1,738 pages in full that includes 885 pages of grand jury records and 707 pages of "non-responsive/categorically third-party records, (including 160 pages returned from the BOP)."  Boseker Decl. ¶¶ 22-24 (parenthesis in original).  All of the responsive records were located in plaintiff's criminal case file maintained by the United States Attorney's Office for the Western District of Virginia ("USAO/WDVA") where plaintiff was prosecuted and  convicted "of multiple counts of criminal statutory violations relating to [a] murder for hire perpetrated upon . . . Mr. Wimbush."  *Id.* ¶ 26; *see Plunkett v. U.S.*, No. 4:04-cr-70083, No. 4:09-cv-80205, 2011 WL 2199174, at *1 (W.D. Va. June 6, 2011) (identifying plaintiff as "a federal inmate serving a life sentence for his convictions in connection with his role in a murder for hire conspiracy . . . .").

REVIEW STANDARD

Summary judgment may be appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Courts draw all reasonable inferences from the evidentiary record in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"A district court must conduct a de novo review of the record in a FOIA case, and the agency resisting disclosure bears the burden of persuasion in defending its action." *Milton v. U.S. Dep't. of Justice*, 783 F. Supp. 2d 55, 57 (D.D.C. 2011) (citing 5 U.S.C. § 552(a)(4)(B)).  In a FOIA case, summary judgment in favor of an agency is warranted where the agency demonstrates that no material facts are in dispute, that it conducted a search of records in its custody or control that was reasonably forecast to divulge all relevant information, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and that the information found through the search has either been released to the requestor or is exempt from disclosure.  *See Skinner v. U.S. Dept. of Justice*, 806 F. Supp. 2d 105, 111 (D.D.C. 2011) (citing *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)).

When, as here, an agency's search is questioned, the agency is entitled to summary judgment upon a showing, through declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, that it conducted a search likely to locate all responsive records.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  Without contrary evidence of bad faith, the agency's amply detailed affidavits are sufficient to demonstrate compliance with the FOIA.  *Id.* at 127.  A search does not have to be exhaustive, and whether a search is adequate is determined by methods, not results.  *Weisberg*, 745 F .2d at 1485.  An agency's failure to locate a specific responsive document will not, on its own, render an otherwise reasonable search inadequate.  *See Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C. 2009) (citing *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004)) (other citation omitted).

DISCUSSION

Plaintiff's lengthy opposition to defendant's motion may be summed up as a challenge to EOUSA's claimed exemptions and search for responsive records.  *See* Mem. of P. & A. in Opp'n to Def.'s Mot. for Partial Summ. J. ("Pl.'s Opp'n") [Dkt. # 24] at 1 ("Plaintiff opposes summary judgment on the grounds that the EOUSA has improperly withheld agency records that are non-exempt, . . . that certain exemptions have been claimed improperly as a matter of law, [and that] the search performed [was] inadequate.").  EOUSA's sole evidence in support of summary judgment is Boseker's declaration accompanied by exhibits and a *Vaughn* index.

    1.  The Search for Records

"A declarant in a FOIA case satisfies the personal knowledge requirement in [Rule 56(c)(4)] if in his declaration, [he] attests to his personal knowledge of the procedures used in handling [a FOIA ] request and his familiarity with the documents in question."  *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (citations and internal quotation marks omitted).  Although "hearsay in FOIA declarations is often permissible," *id.*, the person in charge of the search is "the most appropriate person to provide a comprehensive affidavit" about the search.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir.1991) (citing *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986)).

Plaintiff argues that Boseker's description of the search, Boseker Decl. ¶ 27, is "wholly inadequate," Pl.'s Opp'n at 3.  His argument has merit.  Boseker states that the FOIA contact at the  USAO/WDVA, Jo Brooks, "conducted a systematic search for records" and describes generally the type of search that may have been performed.  Boseker Decl. ¶ 27.  Boseker does not claim to have any personal knowledge about that search and he has not proffered Brooks' declaration describing her search.  There is no evidence describing the filing systems that were

actually searched and the search terms that were utilized.  Nor is there any evidence establishing

that all files likely to contain responsive records were searched.  Viewing these omissions "in the

light most favorable to the requester," *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994), a

factual dispute exists on the adequacy of EOUSA's search.  Therefore, defendant's motion for

summary judgment with regard to the adequacy of the search will be denied.

    2.  <u>Defendant's Claimed Exemptions</u>

*Exemption 3*

    FOIA Exemption 3 covers records that are "specifically exempted from disclosure by

statute . . .  provided that such statute either "(A) [requires withholding] in such a manner as to

leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers

to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3); *see Senate of the*

*Commonwealth of  Puerto Rico v. U. S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987).

    The Federal Rules of Criminal Procedure prohibit disclosure of "matters occurring before

[a] grand jury."  Fed. R. Crim. P. 6(e)(2); *see In re: Motions of Dow Jones & Co., Inc.*, 142 F.3d

496, 498-501 (D.C. Cir. 1998).  Criminal Rule 6(e) qualifies as a statute under Exemption 3

because it was affirmatively enacted by Congress.  *See Fund for Constitutional Government v.*

*National Archives and Records Service*, 656 F.2d 856, 867-68 (D.C. Cir. 1981).

    The United States Court of Appeals for the District of Columbia Circuit has limited the

grand jury exception to material, which, if disclosed, would "tend to reveal some secret aspect of

the grand jury's investigation, such matters as the identities of witnesses or jurors, the substance

of testimony, the strategy or direction of the investigation, the deliberations or questions of

jurors, and the like."  *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *SEC*

*v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (en banc)); *see Lopez v. Dep't of*

*Justice*, 393 F.3d 1345, 1349 (D.C. Cir. 2005) ("[a]ll grand jury subpoenas . . . fall within

FOIA's third exemption"); *but see Lopez,* at 1351 ("exemption [3] does not include all

preliminary interviews conducted by prosecutors supervising grand jury investigations").

Defendant applied exemption 3, in conjunction with exemptions 7(C), 7(D) and 7(F), to

885 pages of "documents specifically identified to the grand jury investigation concerning the

murder for hire homicide, including . . . subpoenas and all records obtained from identified

sources in response to said subpoenas . . . as well as transcripts of grand jury witness testimonies,

and identified grand jury exhibits." *Vaughn* index (Doc. # 43). The release of the information

would disclose "the scope of the grand jury's investigation . . ., how the Government developed

its case, and who the Government relied upon to develop the elements of the alleged crimes."

Boseker Decl. ¶ 31.  According to the *Vaughn* index, the withheld documents are not segregable

because "[a]ny disclosure from within this material would impermissibly reveal the scope and

inner workings of the grand jury investigation."  Defendant properly withheld the grand jury

records under exemption 3.

*Exemption 5*

Exemption 5 provides that "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party other than an agency in litigation with the agency" are

exempt from disclosure under the FOIA.  5 U.S.C. § 552(b)(5).  The exemption is intended to

protect the decision-making processes of government agencies and to encourage open discussion

of legal and policy issues. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. U.S. Dep't of Justice*,

503 F. Supp. 2d 373, 380 (D.D.C. 2007) (citing *Leadership Conf. on Civil Rights v. Gonzales*,

404 F. Supp. 2d 246, 253 (D.D.C. 2005)).  For a document to be exempt under this provision, its

source must be a government agency . . . and it must fall within the ambit of documents

" 'normally privileged in the civil discovery context.' "  *Id.* (quoting *Leadership Conf.*, 404 F.

Supp. 2d at 253 (other citations omitted).  Those privileges include attorney-client privilege,

work product, and the deliberative process privilege.  *Id.* (citing *Dep't of Interior v. Klamath*

*Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  A document containing "facts 'integral to

the legal analyses and discussions of investigation strategy' " qualifies as attorney work product,

*Martin v. Dep't of Justice*, 488 F.3d 446, 455-56 (D.C. Cir. 2007) (quoting *Judicial Watch, Inc.*

*v. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005)), and a document protected by the work product

privilege "is fully protected," thereby requiring no segregability analysis.  *Id.*

Defendant applied exemption 5, in conjunction with exemptions 6 and 7(C), to a 27-page

jury questionnaire summary prepared by an assistant United States attorney for a trial scheduled

on August 15, 2005.  *Vaughn* index (Doc. # 33).  Boseker states that the document was withheld

in full because it constitutes attorney work product inasmuch as it "reflects such matters as trial

preparation, trial strategy, interpretations, and personal evaluations and opinions pertinent to

[plaintiff's] criminal case specifically in the matter of juror selection."  Boseker Decl. ¶ 34.

Boseker also states that "[t]he records were prepared by or at the request or direction of an

attorney, and made in anticipation of or during litigation."  *Id.*   Defendant properly withheld the

jury questionnaire summary in its entirety as attorney work product.

*Exemptions 6 and 7(C)*

Defendant withheld third-party identifying information and third-party records under the

FOIA's personal privacy provisions, namely, exemptions 6 and 7(C).  Boseker Decl. ¶¶ 36-38,

41, 45-46.  Exemption 6 protects information about individuals in "personnel and medical files

and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552 (b)(6).  All information that "applies to a particular individual"

would qualify for consideration under this exemption.  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *accord New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc); *see Akin, Gump*, 503 F. Supp. 2d at 381 ("Congress' primary purpose in drafting Exemption 6 was to provide for confidentiality of personal matters.") (citation and internal quotation marks omitted).  Exemption 7(C) protects from disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

It cannot be reasonably disputed that the requested records concerning plaintiff's criminal prosecution are law enforcement files subject to review under exemption 7.  *See Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester] explicitly sought records related to his own criminal prosecution.").  The focus therefore will be on whether defendant properly withheld information under the "somewhat broader" standard of exemption 7(C).  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (citation omitted); *see Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

"As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information."  *Blackwell*, 646 F.3d 37 at 41 (citing cases).  This is because the disclosure of information about an individual's involvement in law enforcement proceedings constitutes an unwarranted invasion of personal privacy under exemption 7(C).  *See Fitzgibbon v. CIA*,  911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Branch  v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987)) ("'the mention of an individual's

9

name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation'"); *accord Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing cases that have "consistently supported nondisclosure of names or other information identifying [third-party] individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants."). Thus, third-party identifying information is "categorically exempt" from disclosure under exemption 7(C) in the absence of an overriding public interest in its disclosure. *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995).

The United States Supreme Court has broadly interpreted the "personal privacy interest that Congress intended Exemption 7(C) to protect." *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762 (1989); *accord Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 165 (2004) ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or 'cramped notion'. . . .") (quoting *Reporters Committee*, 489 U.S. at 763). Such privacy interests may be invaded, then, only when a requester shows that the information is necessary to "shed any light on the [unlawful] conduct of any Government agency or official." *Reporters Committee*, 489 U.S. at 772-73; *accord Nation Magazine, Washington Bureau*, 71 F.3d at 887-88; *SafeCard Services, Inc., v. SEC*, 926 F.2d 1197, 1206 (D.C. Cir. 1991).

Plaintiff "must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake" and that "the information is likely to advance that interest." *Favish*, 541 U.S. at 172. Such a showing requires "more than a bare suspicion" of official misconduct; "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."

*Id*. at 174.  For it is "[o]nly when [such evidence is] produced [that] there [will] exist a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records."  *Id*. at 174-75.  Plaintiff has not argued for disclosure of the withheld material based on an overriding public interest.[2]  Rather, he argues for disclosure under the public domain doctrine.  Pl.'s Opp'n at 14.

Under the public domain doctrine, information otherwise exempt from disclosure "lose [s its] protective cloak once disclosed and preserved in a permanent public record."  *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999).  Plaintiff has the initial burden of "pointing to specific information in the public domain that appears to duplicate that being withheld."  *Callaway v. U.S. Dep't of Treasury*,  824 F. Supp. 2d. 153, 164 (D.D.C. 2011) (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).

Plaintiff invites a comparison between a police report defendant allegedly released on May 8, 2009, and the same report it allegedly released on June 2, 2011, containing different redactions.  Pl.'s Opp'n at 15.  Plaintiff has not identified the specific information he claims defendant withheld that is in the public domain and he overlooks the fact that the second release in June 2011 was of pages additional to -- not  duplicates of -- the earlier released pages.  Boseker Decl. ¶¶ 22-23.  Plaintiff also points to an online newspaper article that he claims contains a  statement made by a Reverend Larry Hill that also appears in the foregoing redacted police report.  Pl.'s Opp'n at 15 (citing Ex. BB).  But the public domain doctrine applies only to

---

[2]  In his opposition to defendant's application of exemption 7(D), an exemption that has no balancing component, plaintiff claims that defendant "has engaged in an illegal cover-up, being that testimony was illicited [sic] from various confidential informants during [his] trial without the[ir] identity being disclosed to the jury."  Pl.'s Opp'n at 18.  Even if stated in response to defendant's exemption 7(C) claim, those facts do not amount to "an illegal cover-up" and, thus, would not trigger the exemption 7(C) balancing requirement.

information that has been "officially acknowledg[ed]." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C.

Cir. 2007). As the D.C. Circuit explained:

> an official acknowledgment must meet three criteria: First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. . . . Third, . . . the information requested must already have been made public through an official and documented disclosure. . . . Thus, the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption.

*Id*. (citations omitted). Plaintiff makes similar claims about statements supposedly made by

Joyce Stone and claims that "[s]he also testified publicly at trial to this information." Pl.'s Opp'n

at 16. However, plaintiff has not provided a transcript of Stone's testimony, *see Callaway*, 824

F. Supp. 2d at 164, and he has not shown that any statements she may have made to a newspaper

reporter were officially acknowledged. Accordingly, plaintiff is not entitled to release of the

otherwise exempt information under the public domain doctrine.

Plaintiff also argues that defendant failed to first ascertain the "life status" of the third-

party individuals. Pl.'s Opp'n at 16. He claims particularly that "[t]he statements of Michael

Wimbush and Jeffrin Nolan should be released because [they] are deceased . . . ." *Id*. Plaintiff

has not supplied the proof of their deaths that would be expected but, even if they are deceased,

their privacy interests are not per se extinguished. *Accuracy in Media, Inc. v. Nat'l Park Serv.*,

194 F.3d 120, 123 (D.C. Cir. 1999) ("[O]ur circuit has squarely rejected the proposition that

FOIA's protection of personal privacy ends upon the death of the individual depicted.")

(examining *Campbell v. United States Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998)). Rather,

"[t]he fact of death . . . while not requiring the release of information, is a relevant factor to be

taken into account in the balancing decision whether to release information." *Schrecker*, 349

F.3d at 661 (citations and internal quotation marks omitted). Because plaintiff has not asserted a

public interest to trigger the balancing requirement, his so-called life status "argument has no merit." *Piper v. U.S. Dep't of Justice*, 428 F. Supp. 2d 1, 3-4 (D.D.C. 2006).

*Exemption 7(D)*

FOIA Exemption 7(D) protects from disclosure records that "could reasonably be expected to disclose the identity of a confidential source. . . ." 5 U.S.C. § 552(b)(7)(D). "[I]n the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation," the agency may also withhold "information furnished by a confidential source." *Id*. In addition to showing that the information was compiled for a law enforcement purpose, the agency must also show that the informant conveyed the information under either an express or implied promise of confidentiality and that disclosure could reasonably be expected to disclose the source's identity. *United States Dep't of Justice v. Landano*, 508 U.S. 165, 171-72 (1993).

An express assurance of confidentiality is shown by an agency's proffer of "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell*, 164 F.3d at 34 (quoting *Davin v. United States Dep't of Justice*, 60 F.3d 1043, 1061 (3d Cir. 1995)). Such evidence may take many forms, such as notations on the face of the withheld document, an official's personal knowledge about the source, a statement from the source, or documents discussing practices or policies for dealing with the source at issue or similarly situated sources. *Id.* The government is not entitled to a presumption of confidentiality simply because "the source provide[d] information . . . in the course of a criminal investigation." *Landano*, 508 U.S. at 181. Thus, when the agency claims an implied assurance of confidentiality, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." *Id.* at 172. An implied assurance of confidentiality may be inferred from

13

evidence showing the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target.  *Id; Computer Professionals for Social Responsibility v. U.S. Secret Service*, 72 F.3d 897, 905-06 (D.C. Cir. 1996).

Defendant applied exemption 7(D), in conjunction with exemptions 7(C) and 7(F), to portions of statements by "eyewitnesses to either murder, itself, or persons cooperating in providing evidence as to suspects . . . ."  *Vaughn* index (Doc. # 35); *id* (Doc. # 41).  In addition, defendant asserts that "in at least one instance, there is reference to a confidential informant providing information."  *Id*. (Doc. # 35).  Boseker states that where an express assurance of confidentiality is not shown, confidentiality may be "reasonably inferred [because] [t]he witnesses provided both the identities of the conspirators [to a murder for hire plot] and [the] circumstances surrounding the perpetration of the murder."  Boseker Decl. ¶ 52.  Defendant has not supplied "probative evidence that [a] source did in fact receive an express grant of confidentiality," *Callaway v. U.S. Dep't of Treasury*, 577 F. Supp. 2d 1, 3 (D.D.C. 2008) (internal quotation marks and citation omitted), but it has provided sufficient information about the investigation, the criminal activity, and the witnesses' relationship to the targets to infer an implied grant of confidentiality.  *See Mays v. Drug Enforcement Admin*., 234 F.3d 1324, 1329-31 (D.C. Cir. 2000) (discussing " 'generic circumstances in which an implied assurance of confidentiality fairly can be inferred' ") (quoting *Landano*, 508 U.S. at 179).  In *Mays*, there was "no doubt that a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential."  *Id*. at 1331.  Surely, the same presumption would apply to a witness to a murder

for hire conspiracy.   Defendant properly applied exemption 7(D) to Documents 35 and 41 described in the *Vaughn* index.

*Exemption 7(F)*

Exemption 7(F) of the FOIA protects from mandatory disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).   In general, this exemption has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester.  *See Durham v. United States Dep't of Justice*, 829 F. Supp. 428, 434 (D.D.C. 1993); *Public Employees for Environmental Responsibility (Peer), Rocky Mountain Chapter v. U.S. E.P.A.*, 978 F. Supp. 955, 961 (D. Colo. 1997) (citing cases).   In reviewing claims under exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm.  *Albuquerque Pub. Co. v. U.S. Dep't. of Justice*, 726 F. Supp. 851, 858 (D.D.C. 1989).

Defendant applied exemption 7(F) in conjunction with exemptions 5, 7(C) and 7(D), to portions of Documents 35 and 41.   Boseker Decl. ¶¶ 55-56.  As with the previous findings, defendant's application of this exemption based on a reasonable fear for the safety of "[c]ertain individuals, confidential informants, and witnesses" connected to the murder for hire plot was proper.  *See Adionser v. Dep't of Justice*, 811 F. Supp. 2d 284, 301 (D.D.C. 2011) ("DEA properly applied Exemption 7(F) to protect the physical safety of special agents, law enforcement officers, government employees, and confidential sources of information . . . .") (citations omitted).

Plaintiff challenges defendant's " 'large swaths' " of redactions made to a number of released documents under exemptions 7(C), 7(D), and 7(F).  Pl's. Opp'n at 13, 17, 19.  But he overlooks the fact that in such instances, defendant applied those exemptions in tandem and that exemption 7(D) in particular permits withholding not only third-party identifying information of confidential sources but also, under the circumstances of this case, the information they supplied. In addition, plaintiff overlooks Boseker's explanation that "[w]here a record was identified to a third party individual's relationship to the subject murder, . . . it was indexed and exemptions applied."  Boseker Decl. ¶ 24 n.2.  Because, as is stated above, "FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information," *Blackwell*, 646 F.3d at 41, no genuine dispute is shown merely because a released record was heavily redacted.  Plaintiff suggests that the documents be reviewed in camera.  Because defendant's *Vaughn* index and plaintiff's own exhibits of the challenged records allow for meaningful de novo review of the claimed exemptions, an in camera review is not warranted. *See Graham v. Mukasey*, 247 F.R.D. 205, 297 (D.D.C. 2008) (citing *Weissman v. Central Intelligence Agency*, 565 F.2d 692, 698 (D.C. Cir. 1977)) (stating, in a FOIA case, that "only where the record is vague or the agency claims too sweeping or suggestive of bad faith" that an in camera examination is warranted.)

3.  <u>Record Segregability</u>

An agency must disclose "[a]ny reasonably segregable portion" of an otherwise exempt record.  5 U.S.C. § 552(b).  While an agency is presumed to have complied with its obligation to disclose non-exempt portions of the record, a "district court must make specific findings of segregability regarding the documents to be withheld."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).  When, as here, records are withheld in their entirety, a

determination must be made as to whether any portion of those records could have been segregated and released. *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1027-28 (D.C. Cir. 1999). To justify the withholding of entire records, an agency must demonstrate that the "exempt and nonexempt information are 'inextricably intertwined,' such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Mays*, 234 F.3d at 1327 (quoting *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981)) (other citation and internal quotation marks omitted).

Boseker states that "each document was evaluated to determine if any information could be segregated and released" and that the documents "withheld in their entirety contained no meaningful [releasable] portions . . . ." Boseker Decl. ¶ 57. The *Vaughn* index supports Boseker's statement, as does the case law with respect to the complete withholding of the grand jury records, attorney work product, and third-party records. Defendant has demonstrated that it disclosed all reasonably segregable records that are currently at issue.

4. Record Referrals

Plaintiff takes issue with EOUSA's referral of certain records to the Marshals Service and BOP for review and a response directly to plaintiff. *See* Pl.'s Opp'n at 20-22. Because EOUSA is ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request, a referral of records could constitute an improper withholding if the "net effect [of the referral procedure] is significantly to impair the requester's ability to obtain the records or significantly to increase the amount of time he must wait to obtain them." *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998) (quoting *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983)) (internal quotation marks omitted) (brackets in original).

17

As background information, Boseker refers to an OIP letter advising plaintiff that some of the records referred to BOP were returned to EOUSA but Boseker does not otherwise address the referrals.  Therefore, defendant's motion for summary judgment with regard to the referred records will be denied.

5.  <u>Unprocessed Records</u>

Defendant seems to question whether it interpreted plaintiff's revised request too narrowly as seeking only that information that directly relates to "the homicide of Tyree Nathaniel Wimbush."  Boseker Decl. ¶ 22 n.1.  It then invites plaintiff to indicate whether he "believes that [seemingly related] material is, in fact, within the scope of his request" and if so, defendant "would ask leave of the court to process the materials in accords [sic] with the FOIA."  *Id*.  Plaintiff responds that he "was seeking [such] records and would still like to receive [them]."  Pl.'s Opp'n at 7.  Therefore, defendant will be granted leave to process the additional records.[3]

6.  <u>Agency Bad Faith</u>

Plaintiff argues throughout his opposition that defendant has acted in bad faith, but he does not make clear in what material way the defendant acted in bad faith.  *See* Pl.'s Opp'n at 4-7; 26-31.  To sustain this claim, plaintiff "must point to evidence sufficient to put the Agency's [presumption of] good faith into doubt."  *Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771

---

[3] Defendant has indicated that plaintiff has not yet expended the $280 fee he has paid but it notes that any further processing of the request could increase plaintiff's costs.  Boseker Decl. n.1.  Plaintiff is advised that defendant has no obligation to disclose records absent the plaintiff's payment of any assessed fee.  Furthermore, the payment or waiver of an assessed fee or an administrative appeal from the denial of a fee waiver request is a condition precedent to obtaining judicial review.  *See Smith v. Fed. Bureau of Prisons*, 517 F. Supp. 2d 451, 455 (D.D.C. 2007) (citations omitted).

(D.C. Cir. 1981).  "Purely speculative claims" of bad faith will not suffice to overcome the presumption.  *Id*.

    To the extent that plaintiff's bad faith argument is based on defendant's search for what it determined to be records responsive to plaintiff's narrowed request, *see e.g.,* Pl.'s Opp'n at 4-5, defendant reasonably interpreted the narrowed request for "[a]ny and all (statements and investigative) information pertaining to me from January 1st of 1999 up until the present" as excluding "documents connected to what appears to be a narcotics-related incident and laboratory reports arising from that incident, which does not appear to connect with the homicide."  Boseker Decl. n.1.

    To the extent that plaintiff's argument is based on defendant's initial handling of his request, *see, e.g.*, Pl.'s Opp'n at 5-7, "initial delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later affidavits by the agency."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citations omitted); *see Perry*, 684 F.2d at 125 ("[H]owever fitful or delayed the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform."); *accord Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("[B]ecause the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action.") (citing *Perry*); *see also Ground Saucer*, 692 F.2d at 772 ("[T]he institution of a de novo search significantly undercuts appellant's argument that earlier noncooperation by the CIA raises a substantial question of current bad faith on the part of the Agency.  Indeed, if the release of previously withheld materials were held to constitute evidence of present 'bad faith,' similar evidence would exist in every FOIA case involving additional releases of documents after the filing of suit.") (citation omitted).

Finally, to the extent that plaintiff's argument is based on his disagreement with defendant's claimed exemptions and his unsubstantiated suggestions that defendant has doctored its proffered exhibits, *see, e.g.,* Pl.'s Opp'n at 5-9, he has failed to offer any evidence to rebut the "presumption of good faith" accorded agency declarations. *Long v. U.S. Dep't of Justice*, 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (citation and quotation omitted). In sum, plaintiff has failed to demonstrate that defendant has in any way acted in bad faith.

7. <u>The Privacy Act Exemption</u>

Plaintiff argues that defendant "improperly invoked" exemption (j)(2) of the Privacy Act.[4] Pl.'s Opp'n at 8-9. Given that subsection (j)(2) explicitly authorizes law enforcement agencies to exempt from mandatory disclosure record systems pertaining to, *inter alia,* "the activities of prosecutors," 5 U.S.C. § 552a(j)(2), plaintiff is simply wrong. *See* 28 C.F.R. § 16.81(a) (exempting the United States Attorney's Criminal Case Files). In any event, the Privacy Act does not bar disclosure of documents that are otherwise required to be disclosed under the FOIA, 5 U.S.C. § 552a(b)(2); *see Greentree v. United States Customs Serv.*, 674 F.2d 74, 79 (D.C. Cir. 1982), and defendant properly reviewed and released responsive records under the FOIA.

---

[4] Inexplicably, plaintiff sets forth the language of the Privacy Act's accounting requirements, 5 U.S.C. § 552a(c)(1). Pl.'s Opp'n at 8. Nothing in the complaint's allegations suggests that plaintiff is suing under that provision of the Privacy Act. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1124 (D.C. Cir. 2007) ("The core elements of [an accounting] claim are (1) failure by [agency] to maintain an accurate accounting of disclosures, and (2) a resultant adverse effect on [the subject of the disclosure].") (citation omitted).

CONCLUSION AND ORDER

For the foregoing reasons, defendant's motion for summary judgment will be granted as to its claimed exemptions and the segregability of the processed records, and will be denied in all other respects without prejudice.  Accordingly, it is hereby

ORDERED that defendant's motion for summary judgment [Dkt. # 16] is GRANTED in part and DENIED in part without prejudice; it is further

ORDERED that by March 22, 2013, defendant shall (1) process the remaining responsive records and release any non-exempt records to plaintiff, and (2) file a properly supported summary judgment motion that addresses those records, the referred records, and the actual search for responsive records; it is further

ORDERED that plaintiff's motion for counsel [Dkt. # 22], motion for an in camera inspection [Dkt. # 23], and motion for a writ of mandamus [Dkt. # 28] are DENIED.


_____/s/_____
RICHARD W. ROBERTS
DATE: February 20, 2013          United States District Judge