## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHOINE PLUNKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 11-0341 (RDM) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an action brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or "the Act").  Plaintiff, who is currently serving a life sentence for murder for hire and related crimes, seeks records from the Executive Office of United States Attorneys ("EOUSA"), a component of the Department of Justice ("Department"), relating to his prosecution and conviction.  In February of 2013, the Court granted in part and denied in part the Department's first motion for summary judgment and ordered the Department to supplement the record, to process additional records, and to release any remaining, non-exempt records.  *See Plunkett v. Dep't of Justice*, 924 F. Supp. 2d 289, 307 (D.D.C. 2013).  Asserting that it has now complied with these requirements, the Department has filed a renewed motion for summary judgment, Dkt. 36, which is now before the Court.

As explained below, the Court concludes that the Department has, for the most part, addressed the concerns raised by the Court's February 2013 decision.  There remain three issues, however, that require further clarification.  As to these issues, the Court once again rejects Plaintiff's contention that the Department has acted in bad faith.  But, more than good faith is required.  Because in the typical FOIA case the court and plaintiff lack their own window into

1

the actual search, review and production of records—and must, instead, rely on the government to explain precisely what it has done to comply with the Act—substantial clarity and detail are required.  Here, the Department's declarations do not fully address (1) whether two binders of material identified in an email were, in fact, reviewed for responsive documents, and if so, what was found; (2) which, if any, of the documents originally referred to the Bureau of Prisons ("BOP") for review were withheld and, if so, which FOIA exemption is applicable; and (3) the segregability of portions of one document that the Department withheld in part.

Accordingly, the Department's renewed motion is **GRANTED** in part and **DENIED** in part.  The Department may file a further motion for summary judgment addressing the three remaining issues.  Because the parties' prior briefing and the decisions of this Court have substantially narrowed the issues presented, however, the parties should endeavor to limit further briefing to those issues.  A further briefing schedule, with appropriate page limits, is set forth in a separate order accompanying this Memorandum Opinion.

## I.  BACKGROUND

Plaintiff is currently serving a life sentence for murder for hire and other related crimes. Plaintiff was accused of hiring two men to murder Tyree Nathaniel Wimbush "because [Plaintiff] mistakenly thought Wimbush was a confidential informant for local drug investigators."  *United States v. Bodkins*, 274 Fed. App'x 294, 296 (4th Cir. 2008).  After a six-day trial, he was convicted of conspiracy to travel in interstate commerce to commit murder for pecuniary gain and interstate travel to commit murder for pecuniary gain, along with a number of other offenses. *Id*. at 295.  On appeal, Plaintiff argued that there was insufficient evidence to support his conviction and that the government committed *Brady* violations and violated his due process

rights by failing to disclose certain information. *Id.* at 296.  In April 2008, the Court of Appeals

for the Fourth Circuit rejected Plaintiff's arguments and affirmed his convictions. *Id.* at 302.

Less than a month later, Plaintiff submitted a FOIA request to EOUSA seeking all records

that "make[ ] reference to" or "relate[ ] to" him, including any records "generated and/or retained

. . . as a result of the homicide of Tyree Nathaniel Wimbush." Dkt. 1-1 at 2.  Plaintiff further

specified that EOUSA should seek his "approval" for "any expenses in excess of $300." Dkt.

16-5 at 17.  EOUSA responded with a form letter assigning the request a number and explaining

that if Plaintiff wished "to revise [his] request to try to reduce fees," he could use a provided

form. Dkt. 16-5 at 18.  Plaintiff responded by limiting his request to "Any and All (statements

and investigative) information pertaining to [Plaintiff] from January 1st of 1999 up until the

present." *Id.* at 20.  EOUSA subsequently informed Plaintiff that it estimated that the search fee

for his request would exceed $300, explained that it would search for 10 hours in order to avoid

exceeding that limit for a total cost of $280 (at $28/hour), and explained that it would require

Plaintiff to pay that fee before it would process his request. *Id.* at 21.  Plaintiff submitted an

advance payment of $100 on October 8, 2008. *Id.* at 22.

The Department contends that, in response to Plaintiff's $100 "advance payment,"

EOUSA sent Plaintiff a notice informing him that the $100 payment would not suffice and that

full payment was necessary to process the request. *Id.* at 23.  As discussed below, Plaintiff

asserts that he never received this notice.  In any event, Plaintiff submitted the remaining balance

of $180 on December 7, 2008, *id.* at 24, and EOUSA proceeded to process his request.  In May

2009, EOUSA informed Plaintiff that it was producing 178 unredacted pages of information,

producing 48 redacted pages, and withholding in full 305 pages, invoking FOIA Exemptions 3,

6, 7(C), 7(D), and 7(F), and Privacy Act Exemption (j)(2). *Id.* at 25.  EOUSA also referred

certain records to the United States Marshals Service and the BOP for them to review and

respond directly to Plaintiff.  *Id.* at 26.  BOP, in turn, released 25 pages in their entirety and

explained that because the remaining pages that BOP had received "did not originate with the

BOP," it returned them to EOUSA for further processing.  *See* Dkt. 25-1 at 43.  Plaintiff appealed

EOUSA's response to the Department of Justice's Office of Information Policy, which denied his

appeal and ruled that some records were also exempt under FOIA Exemption 5.  *Id.* at 49.

 Dissatisfied with the Department's response, Plaintiff filed this civil action in February of

2011.  On June 2, 2011, EOUSA released additional documents and moved for partial summary

judgment.  Dkt. 16.[1]  In support of its motion for partial summary judgment, the Department

submitted the affidavit of John F. Boseker, an attorney advisor in the division of EOUSA that

handles FOIA requests.  Dkt. 16-5 ¶ 1.

 At that time, the matter was assigned to now-Chief Judge Richard W. Roberts, who

granted in part and denied in part the Department's motion for summary judgment.  *Plunkett*,

924 F. Supp. 2d at 307.  The Court granted the Department's motion with respect to all of its

"claimed exemptions and the segregability of the processed records."  *Id.*  It denied summary

judgment, however, as to the adequacy of EOUSA's search for responsive records, *id.* at 298,

307, and the disposition of records referred to the Marshals Service and BOP for review, *id.* at

305, 307.  The Court explained that EOUSA had failed to demonstrate that it had conducted an

adequate search because it (1) had failed to proffer "evidence describing the filing systems that

were actually searched and the search terms that were utilized," and (2) had not submitted "any

evidence establishing that all files likely to contain responsive records were searched."  *Id.* at

---

[1]  After a "recount" of the records it had produced to Plaintiff, the Department also slightly
revised the "page count" of the records it had produced.  Dkt. 16-5 ¶¶ 23-24, n. 2.

298.  With respect to the records that EOUSA referred to the Marshals Service and BOP for review, the Court explained that "EOUSA is ultimately responsible for processing responsive records in its custody and control at the time of the FOIA request," *id.* at 305, and noted that while the Boseker declaration indicated that some of the records had been returned to EOUSA, it "did not otherwise address the referrals."  *Id.*

The Court also rejected Plaintiff's arguments that EOUSA had acted in bad faith in processing Plaintiff's FOIA request.  *Id.* at 305-06.  The Court explained that to the extent Plaintiff's bad faith argument was predicated on the scope of EOUSA's search for records, the argument failed because EOUSA had reasonably interpreted Plaintiff's narrowed request for records; to the extent the argument was predicated on EOUSA's initial handling of the FOIA request, it failed because "'initial delays in responding to a FOIA request'" generally are not grounds for discrediting later agency affidavits, *id.* at 306 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003)); and to the extent it was premised on "his disagreement with [EOUSA's] claimed exemptions and his unsubstantiated suggestions that [EOUSA] ha[s] doctored its proffered exhibits," Plaintiff had failed to adduce evidence to overcome the presumption of good faith accorded to the government's declarations, *id.*

Finally, because the Department "seem[ed] to question whether it [had] interpreted [P]laintiff's [FOIA] request too narrowly," the Court granted the Department leave to process additional records that it had previously identified but deemed unresponsive, *id.*  EOUSA had previously interpreted Plaintiff's request as extending only to records related to the murder for hire investigation, and, accordingly, had not produced documents pertaining to other criminal charges that Plaintiff had faced.  Because Plaintiff clarified that he intended his FOIA request to encompass records from all investigations during the specified time frame, the Court ordered the

Department to process those additional records and to file a renewed motion for summary

judgment addressing the additional records, the records that had been referred to the Marshals

Service and BOP, and EOUSA's search for responsive records.  *Id.* at 305, 307.

The Department's renewed motion for summary judgment, Dkt. 49, is now before the

Court.  The motion is supported by a supplemental declaration by John F. Boseker, Dkt. 36-5; a

declaration by Jo T. Brooks, the FOIA contact in the U.S. Attorney's Office for the Western

District of Virginia, who had actually conducted the search, Dkt. 36-4; and a declaration by a

FOIA official from the Marshals Service, Dkt. 36-6.  Plaintiff opposed the motion, Dkt. 45, and

the Department filed a reply, Dkt. 49-1, along with supplemental declarations by Boseker and

Brooks addressing some of the arguments Plaintiff raised in his opposition.  Dkts. 49-2, 49-3.  In

response to the additional evidence, Plaintiff filed a surreply on April 14, 2014.  On November

18, 2014, the case was reassigned to Judge Randolph D. Moss.

## II.  LEGAL STANDARDS

The Freedom of Information Act is premised on the notion that an informed citizenry is

"vital to the functioning of a democratic society, needed to check against corruption and to hold

the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978).  It embodies a "'general philosophy of full agency disclosure.'"  *United States Dep't*

*of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352,

360-61 (1976)).  To promote government transparency, FOIA thus requires federal agencies to

produce agency records to any person who requests them, unless the request is procedurally

defective or the information requested falls within one of nine enumerated exemptions to the

rule.  5 U.S.C.§ 552(a)(3), (b).

FOIA grants jurisdiction to federal district courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B); *see also Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980).  In general, "once all requested records are surrendered, federal courts have no further statutory function to perform."  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *see also, e.g*., *Boyd v. Criminal Div. of U.S. Dep't. of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) ("[B]ecause the report was located in the work file and subsequently disclosed, the issue is moot for purposes of this FOIA action.").

The Act provides that when a plaintiff alleges that an agency has improperly withheld records, the reviewing court must "determine the matter de novo."  5 U.S.C. § 552(a)(4)(B).  In making this determination, the Court must "'ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under . . . FOIA.'"  *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)).  FOIA cases are typically resolved on motions for summary judgment, which require that the moving party demonstrate that there are no genuine issues of material fact and he or she is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011) (noting that FOIA cases "frequently are decided" on motions for summary judgment).  To meet its burden, when it moves for summary judgment in a FOIA case, the government must submit "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks omitted), and an index of the information withheld, *see Vaughn v. Rosen*, 484 F.2d 820, 827-28 (D.C. Cir. 1973); *Summers*, 140 F.3d at 1080 (explaining that to carry its

7

burden, an agency that declines to produce a requested document "must submit a '*Vaughn* index' to explain why it has withheld information"). An agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. U.S. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

### III. DISCUSSION

In its renewed motion for summary judgment, the Department contends that it has now done all that FOIA and the Privacy Act require of it. Plaintiff disagrees. He argues that the Department: (1) has still failed to demonstrate that it has conducted an adequate search; (2) has incorrectly invoked various FOIA exemptions; (3) has, once again, failed to justify withholding records referred to BOP for review or to explain what happened with respect to those documents; and (4) has acted in bad faith. The Court will address each argument in turn.

### A. Adequacy of the Department's Search for Responsive Records

In responding to a FOIA request, an agency must conduct a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To establish that a search was adequate, the agency is required to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Negley v. FBI*, 658 F. Supp. 2d 50, 56 (D.D.C. 2009) (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The agency, however, is not required to demonstrate that each and every responsive document was actually located or that no other relevant documents could possibly exist. *Perez-Rodriguez v. U.S. Dep't of Justice*, 888 F. Supp. 175, 182 (D.D.C. 2012) (citing *Weisberg*,

705 F.2d at 1351).  To make the requisite showing, the agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Oglesby*, 920 F.2d at 68.

In support of its first motion for summary judgment, the Department of Justice submitted the declaration of John F. Boseker, who explained that a FOIA contact at the United States Attorney's Office for the Western District of Virginia ("USAO/WDVA"), Jo T. Brooks, "conducted a systematic search for records," and used the case tracking system, "LIONS," to "determine all possible locations of responsive files."  Dkt. 16-5 ¶ 27.  Because Boseker lacked personal knowledge of the search and because, in any event, his declaration did not describe what systems were actually searched or the search terms that were utilized, the Court concluded that there remained a dispute of material fact as to whether the Department had conducted a search that was likely to identify the responsive records.  *See Plunkett*, 924 F. Supp. 2d at 298.

The Department has now supplemented the record with a declaration from Brooks describing the search that she conducted.  Dkt. 36-4.  Brooks avers that upon receiving Plaintiff's request in June 2008, she searched "the USAO Case Tracking System, LIONS" by Plaintiff's name and identified Plaintiff as a co-defendant in a case prosecuted by her office.  *Id.* ¶ 4; *see Plunkett v. United States*, No. 4:04-CR-70083, 2011 WL 2199174, at *1 (W.D. Va. June 6, 2011) (citing *United States v. Bodkins*, 274 Fed. App'x 294, 295-97 (4th Cir. 2008) (unpublished)). She explains that she also "physically searched [the office's] two Criminal Division case file rooms" and searched additional boxes that were "prepared to be shipped to the Federal Records Center" for archiving, but failed to locate the files relating to Plaintiff's case.  Dkt. 36-2 ¶ 4. Brooks then sent an e-mail "to all staff in the [office] . . . requesting a response from any staff

member in the [office] having any documentation, or knowledge of documentation, regarding [Plaintiff]." *Id.* ¶ 5.

On June 26, 2008, Brooks received a response from a paralegal, Diane Fitzgerald, which "indicated the location of several large three-ring binders containing . . . discovery" from Plaintiff's criminal case, "and that within these three binders documents relating to [Plaintiff] were interspersed." *Id.* ¶ 6.  Brooks "retrieved the three-ring binders for review." *Id.*  She was also informed about "several additional boxes of files . . . , the location of which was unclear." *Id.*  By July 2008, however, Fitzgerald had located the missing boxes, and Brooks performed "a preliminary search" to confirm "that the boxes contained the needed documents." Dkt. 36-4 ¶ 10.  Based on that review, Brooks concluded that the "official criminal case file" was "missing from the boxes," and Fitzgerald continued her search. *Id.*  In August 2008, Brooks received "the official criminal case file and two additional boxes of documentation." *Id.*  At that time, she "made a note to proceed with processing of [the] FOIA request upon the response from EOUSA . . . regarding the status of the fee letter." *Id.*

In February 2009, Brooks received word that Plaintiff had paid his fee, *id.* ¶ 13, and, accordingly, she "searched and segregated the contents of the four boxes of documentation and three, three-ring binders." *Id.* ¶ 14.  She located "1,087 pages of Court-Filed/Public Records, 515 pages of Grand Jury transcripts, 500 pages of State and Local Law Enforcement records, 3 pages of correspondence, 50 pages of Attorney Work Product [and] 1,713 pages of discovery [pertaining to Plaintiff]," all of which she forward to EOUSA for review. *Id.* ¶ 14.

The Department has now submitted a declaration from a knowledgeable witness describing the search for records.  Plaintiff, however, "still takes issue with the adequacy of [the] search[.]"  Dkt. 45 at 7.  He argues that the search "was unreasonable and performed in bad faith,

given the fact that [he] was seeking a completed search for records, and the EOUSA arbitrarily processed [his] request for the advance payment amount of $267.30, not even the $280.00, which was quoted[.]" *Id.* Plaintiff also faulted EOUSA for failing to confirm "a final charge" as it indicated it would in its September 24, 2008 fee letter. *Id*.

Neither argument, however, provides a basis for denying the Department's renewed motion for summary judgment. Most significantly, nothing in the record suggests that EOUSA failed to conduct a complete search for records responsive to Plaintiff's revised FOIA request due to the fee limitation. Brooks notes that, based on her preliminary review of the records, she concluded that she might "be able to complete" the search "in the . . . time agreed upon by the requester," *id.* ¶ 12, and she asserts that she, in fact, searched "the contents of the four boxes of documentation and three, three-ring binders" and that "[a]ll pages with the exception of Court-filed/Public Records and Grand Jury records were copied to be forwarded to EOUSA." *Id.* ¶ 14. Plaintiff's contention that EOUSA failed to confirm the final charge, moreover, says nothing about the adequacy of the search.

As Plaintiff notes, however, the Brooks declaration and, in particular, the attachments to that declaration raise one potentially significant issue, although it does not appear to be related to the fee limitation. In her declaration, Brooks asserts that she was informed on June 26, 2008, about "several" binders containing "discovery" from Plaintiff's criminal case, and that "documents relating to" Plaintiff were "interspersed" in these "*three*, three-ring binders." *Id.* (emphasis added). Attached to her declaration, however, is an email that Brooks sent to EOUSA the following day in which she asserted that she had "received *five* 3[-inch] binders of discovery in which [Plaintiff's] material is interspersed." Dkt. 36-4 at 10 (emphasis added). Plaintiff, not unreasonably, questions whether two binders may not have been reviewed.

In response, Brooks submitted a supplemental declaration. Dkt. 49-3. That declaration asserts, "At this point in time, I can only attest that the discrepancy noted in my June 27, 2008[,] email was a result of defining all of the three-ring binders present in the boxes of material I had been given[ ] as discovery binders, when[,] in fact, as determined during the February[ ] 2009 search of the files, not all of the binders contained original discovery materials and, as such, were not responsive to [Plaintiff's] request." *Id.* ¶ 5. This response raises at least two questions requiring further clarification. First, the declaration asserts that two of the five binders were not responsive because they did not contain "original discovery materials," but Plaintiff's FOIA request was not limited to "discovery materials." Dkt. 16-5 at 20. Missing from the record is any description of what was contained in the two binders or a sufficient explanation for why any such records were either non-responsive or exempt from disclosure. Second, the declaration candidly qualifies the relevant paragraph by noting that "At this point in time, I can only attest" as follows. Dkt. 49-3 ¶ 5. It is unclear, however, whether, at the time she executed her supplemental declaration, Brooks reviewed the two binders to confirm that they did not contain any responsive records or whether she based her testimony on her best recollection of events that had occurred six years earlier. Because a reasonable question exists regarding the contents of the two binders and whether they contained any material responsive to Plaintiff's broad FOIA request, further clarification is necessary before the Court can resolve this matter on summary judgment.

**B. EOUSA's Supplemental Processing of Records**

When it initially processed Plaintiff's request for records, EOUSA interpreted Plaintiff's request narrowly and produced only records directly relating to "the homicide of Tyree Nathaniel Wimbush." Dkt. 16-5 ¶ 22 n.1. Because Plaintiff clarified that he also sought other related

records, the Court granted EOUSA leave to process further responsive records.  *See Plunkett*, 924 F. Supp. 2d at 305.  EOUSA has now processed all of the records regarding Plaintiff maintained by the United States Attorney's Office for the Western District of Virginia, Dkt. 36-5 ¶ 1, which conducted Plaintiff's prosecution for all of the offenses related to the murder of Wimbush.  *See Plunkett*, 924 F. Supp. 2d at 297.

On March 20, 2013, EOUSA provided Plaintiff with 170 additional pages of records, 132 of which contained redacted material, and it withheld nine pages in their entirety.  Dkt. 36-5 ¶ 3. EOUSA also withheld 528 pages "entirely belonging to other persons having no reference to [Plaintiff]" as both non-responsive and exempt from disclosure.  *Id*.  In withholding information and records as exempt, EOUSA relied on FOIA Exemptions 5, 7(C), and 7(D), and subsections (j)(2) and (b) of the Privacy Act.  *Id*.  In support of its decision not to release the redacted information and withheld documents, EOUSA has submitted a supplemental declaration from John F. Boseker, Dkt. 36-5 at 1-4, and a *Vaughn* index, Dkt. 36-5 at 7-10.  The supplemental declaration notes that "[e]xplanations applied to the Documents contained in the [*Vaughn*] index are contained both in the original Declaration and the Court's opinion," and are accordingly not "restated" in the supplemental declaration.  *Id*. ¶ 10.

Because the Privacy Act does not bar disclosure of documents otherwise subject to disclosure under FOIA, *see Plunkett*, 924 F. Supp. 2d at 306-07, the only question before the Court is whether EOUSA properly invoked the cited FOIA exemptions.

## 1.  *FOIA Exemption 7*

According to the *Vaughn* index, most of the information that EOUSA redacted was withheld under FOIA Exemption 7(C), on the ground that it contains information about third parties, including law enforcement officers and employees.  Dkt. 36-5 at 7-11.  FOIA Exemption

7(C) prevents the disclosure of information compiled for law enforcement purposes, the release of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  Here, the Court has already concluded that "the requested records concerning plaintiff's criminal prosecution are law enforcement files subject to review under FOIA exemption 7." *Plunkett*, 924 F. Supp. 2d at 300.  And, as the Court has previously explained, "third-party identifying information" contained in law enforcement records "is 'categorically exempt' from disclosure under exemption 7(C) in the absence of an overriding public interest in its disclosure." *Id*. at 301 (quoting *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995)).

Plaintiff does not challenge EOUSA's representation that the records at issue were compiled for law enforcement purposes and implicate the personal privacy of third parties. Rather, he argues that the redacted materials should nonetheless be produced because there is an "overriding public interest in exposing the wrongdoings and criminal activity being perpetuated." Dkt. 45 at 35.  The only discernible examples he provides are his contentions that (1) EOUSA and the United States Attorney's Office have colluded to conceal a *Brady* violation, *see Brady v. Maryland*, 373 U.S. 83 (1963), which he claims tainted his conviction for murder for hire; (2) two pieces of evidence were intentionally "lost" before trial; and (3) an exhibit list and trial transcript from his trial were "altered" to conceal flaws in his trial.  *See* Dkt. 45 at 32-36.

When the government withholds information pursuant to FOIA Exemption 7(C), the Court must balance the public interest in disclosure against the privacy interests at stake.  *See Dep't of Justice v. Reporters Comm.*, 489 U.S. 749, 776 (1989).  The plaintiff bears the burden of showing that "the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that the requested disclosure "is likely

14

to advance that interest." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004). Where the public interest relied upon by the plaintiff involves allegations of official misconduct or an official's failure properly to perform his or her duties, "bare suspicion is not enough." *Id.* at 174. Because "[a]llegations of government misconduct are easy to allege and hard to disprove, . . . courts must insist on a meaningful evidentiary showing." *Id.* at 175 (internal quotation marks and citations omitted). The plaintiff, accordingly, "must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* at 174.

Plaintiff has failed to carry this burden. He has failed to produce any evidence that would permit a reasonable person to believe that a conspiracy existed to alter official court records, including the exhibit list and official transcript of his trial. As Plaintiff recognizes, such a brazen attack on the judicial process could only have been accomplished with the "acquiesce[nce]"of the prosecutors, judge, Plaintiff's own defense attorneys, and others, Dkt. 45 at 41, yet no one other than Plaintiff has ever suggested that such misconduct occurred. Nor does any of the evidence that Plaintiff relies upon support such an extraordinary charge. He argues, for example, that inconsistent font appearing on the exhibit list shows that it was doctored. *See* Dkt. 24-1 at 27 (discussing Exhibit U, Dkt. 24-1 at 85); Dkt. 18-1 at 20. And he argues that the "transcribing of the record of [his] trial . . . took an unusually long . . . period of time." *See* Dkt. 45 at 42. Far more would be required to convince a reasonable person that the alleged alteration of official court records might have occurred.

Plaintiff also argues that two electronic pagers were lost before trial. Dkt. 45 at 34. Plaintiff explains that his co-defendants, who allegedly murdered the victim on Plaintiff's behalf, testified at trial that they did not know the victim, while Plaintiff's defense turned on the

contention that the murder was not a murder for hire, as the prosecution argued, but the result of a "bad drug deal." *Id.* He now claims that the missing pagers might have supported his claim that his co-defendants knew the victim from past drug deals. *Id.* Yet Plaintiff presents no evidence that the pagers would have supported that theory, and, more importantly, no evidence that any government official or employee intentionally "lost" the pagers. Under these circumstances, the Court again concludes that Plaintiff has failed to show that a reasonable person would conclude that official misconduct might have occurred.

Finally, Plaintiff's contention that his trial was tainted by one or more *Brady* violations will not suffice to overcome Exemption 7(C) on the present record. Plaintiff raised alleged *Brady* violations in his post-trial motions and on appeal, and he failed to prevail in either forum. *Bodkins*, 274 Fed. App'x at 296, 299-301. He argued, in particular, that the government did not disclose the prior inconsistent statements of one of its witnesses "until midway through the trial," *id.* at 299, and that it failed to disclose plea discussions that it had with another witness, *id.* at 301. With respect to the first of the alleged *Brady* violations, the Court of Appeals for the Fourth Circuit concluded that the inconsistent statements at issue were not material and that Plaintiff's counsel was able to cross-examine the witness "about his prior inconsistent statements." *Id.* And, as to the second, the Fourth Circuit concluded that the witness at issue was not a government witness (and thus *Giglio v. United States*, 405 U.S. 150 (1972), did not apply) and that there was no reasonable probability that the failure to disclose the evidence affected the result of the trial. *Bodkins*, 274 Fed. App'x at 300.

There is no doubt that someone who has been convicted of a crime "has an intense personal interest in obtaining whatever information might bolster [a] *Brady* claim[ ] . . . in [a] collateral attack[ ] on his conviction." *Roth v. Dep't of Justice*, 642 F.3d 1161, 1177 (D.C. Cir.

2011).  That "personal stake in the release of the requested information," however, "is

'irrelevant' to the balancing of public and third-party privacy interests required by Exemption

7(C)."  *Id.*  (quoting *Mays*, 234 F.3d at 1327).  What matters is whether release of the information

will promote the public's interest in being "informed about 'what their government is up to.'"

*Id.* (quoting *Reporters Comm.*, 489 U.S. at 773).  That standard might well be satisfied where a

*Brady* violation is "blatant," and thus reveals government misconduct of general public interest.

*Id.*  An isolated, immaterial, or uncertain *Brady* violation, however, will not typically suffice for

purposes of Exemption 7(C).  *Boyd*, 475 F.3d at 388 ("[A] single instance of a *Brady* violation . .

. would not suffice to show a pattern of government wrongdoing as could overcome the

significant privacy interest at stake."); *Rodriguez v. Dep't of Army*, 31 F. Supp. 3d 218, 232

(D.D.C. 2014) (same).

       Although Plaintiff devotes substantial attention to alleged violations of *Brady*, he fails to

identify any evidence of a *Brady* violation beyond that which has already been considered by the

Fourth Circuit and found to be immaterial or harmless.  He has failed to come forward with

evidence of the type of pattern of misconduct or blatant disregard for the law that might support

a finding that the public interest trumps any privacy interest for purposes of Exemption 7(C).

"FOIA is not a substitute for discovery in a criminal case or in habeas proceedings."  *Roth*, 642

F.3d at 1177.  The issues that Plaintiff has raised, accordingly, are appropriately raised, if at all,

with the "'court that sentenced [him], not through a FOIA action in this Court.'"  *Richardson v.*

*U.S. Dep't of Justice*, 730 F. Supp. 2d 225, 234 (D.D.C. 2010) (quoting *Covington v. McLeod*,

646 F. Supp. 2d 66, 71 (D.D.C. 2009)).

       To the extent EOUSA relied on Exemption 7(D), Plaintiff's contentions are even less

persuasive.  Exemption 7(D) extends to any information that "could reasonably be expected to

disclose the identity of a confidential source . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . , information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).  Unlike Exemption 7(C), Exemption 7(D) "requires no balancing of public and private interests."  *Roth*, 364 F.3d at 1184.  In its prior decision, the Court approved the withholding of confidential informant records under exemption 7(D) in light of the fact that these records pertain to an investigation of a "murder for hire conspiracy."  *Plunkett*, 924 F. Supp. 2d at 303.  Although the document that EOUSA now identifies as subject to Exemption 7(D) apparently relates to narcotics charges, and not the murder for hire charge, Dkt. 36-5 at 7, the Court's prior rationale applies with equal force.[2]

Finally, Plaintiff "renew[s]" his arguments for compelling disclosure under the public domain doctrine, without further elaboration.  Dkt. 45 at 36.  Those arguments were addressed and rejected in the Court's prior opinion.  *Plunkett*, 924 F. Supp. 2d at 301-02.  Although courts must reconsider interlocutory orders where "justice requires," *Cobell v. Norton*, 222 F.R.D. 266, 271 (D.D.C. 2004), principles of "finality, predictability, and economy of judicial resources" demand that the party seeking reconsideration show that the court's original decision is manifestly unjust, clearly erroneous, or at odds with newly-available, material evidence or authority.  *Pueschel v. Nat'l Air Traffic Controllers' Ass'n*, 606 F. Supp. 2d 82, 85 (D.D.C. 2009); *see also McCoy v. FBI*, 775 F. Supp. 2d 188, 190 (D.D.C. 2011).  Here, Plaintiff has proffered nothing to warrant reconsideration of the Court's previous conclusion that he had not sustained his burden by showing a prior official disclosure of the information he contends is in

---

[2] As explained below, this one document does raise a segregability issue, which is addressed separately.  See *infra* at 22-24.

the public domain.  *See Plunkett*, 924 F. Supp. at 301-02 (discussing *Wolf v. CIA*, 473 F.3d 370

(D.C. Cir. 2007)).

Accordingly, the Court will grant summary judgment to the Department on its application

of Exemption 7(C) and 7(D) to the redacted material.

### 2.  *FOIA Exemption 5*

EOUSA also withheld information from two documents pursuant to FOIA Exemption 5,

which applies to any "inter-agency or intra-agency memorandums or letters which would not be

available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

552(b)(5).  As the Court explained in its ruling on Plaintiff's first motion for summary judgment,

Exemption 5 shields from disclosure attorney work product and deliberative process records.

*See Plunkett*, 924 F. Supp. 2d at 299 ("For a document to be exempt under [Exemption 5], its

source must be a government agency . . . and it must fall within the ambit of documents normally

privileged in the civil discovery context," for example under the attorney-client privilege, work

product, and the deliberative process privilege.) (citations and internal quotation marks omitted).

EOUSA relied on Exemption 5 to withhold in its entirety one eight-page document

(Document 14) consisting of handwritten notes made between 1998 and 2004 that "appear to be

extracted" from a "Data/Audio CD Call Queue Report" (Document 13).[3]  Dkt. 36-5 at 9.  The

notes are described as those of an assistant United States attorney "made during review of [a]

document, [and] reflecting analysis of importance/non-importance as part of [the] investigation."

*Id*.  Because the *Vaughn* index establishes that Document 14 is work product, the Court will grant

---

[3]  The Vaughn index further explains that Document 14 also contains "[r]eference to numerous third party individuals and PD officers," and notes that those names are also covered by FOIA Exemption 7(C).

summary judgment to the Department on its application of Exemption 5 to the withheld document.

### 3. *Other Records*

Finally, besides the redactions described above, the Department also withheld 528 pages on the grounds that they pertain solely to third parties and are not responsive to Plaintiff's FOIA request. Plaintiff does not dispute that the 528 pages of third-party materials are not responsive to his FOIA request.[4] Accordingly, the Court will grant summary judgment as to the withholding of these records.

### 4. *Referred Records*

In the initial processing of Plaintiff's request, the Department explained that it transferred some records to the BOP and the Marshals Service. *See* Dkt. 16-5 at 31-32. BOP, in turn, referred some of the records back to EOUSA for further processing, and the Department ultimately withheld 160 pages of the returned records as "non-responsive/categorically third-party records." *Plunkett*, 924 F. Supp. 2d at 297 (citing Dkt. 16-5 ¶¶ 22-24).[5] Against this backdrop, the Court denied the Department's first motion for summary judgment on the ground that the initial Boseker declaration did "not otherwise address the referrals." *Id.* at 305.

---

[4]  In his original declaration, Boseker explained that the murder investigation underlying Plaintiff's FOIA request "involved a number of third-party individuals and their backgrounds." Thus, a record "entirely concerned with another individual . . . was deemed non-responsive and/or categorically protected" under FOIA Exemptions 6 and 7(C), whereas a record "identified to a third-party individual's relationship to the subject murder . . . was indexed and exemptions applied." Dkt. 16-5 at 6 n.2. The 528 pages withheld here "[c]onsist[] of numerous records of third party individuals having criminal records and backgrounds without reference to Mr. Plunkett." Dkt. 36-5 at 10 (Document 15).

[5]  In denying summary judgment on EOUSA's referral of records, the Court made no distinction between the referral to BOP and the referral to the Marshals Service. *See Plunkett*, 924 F. Supp. 2d at 305.

In support of its renewed motion for summary judgment, the Department has now proffered a declaration from the Marshals Service addressing the disposition of the records referred to it.  Dkt. 36-6.  The Department did not submit a similar declaration from BOP, but instead relies on a third declaration from John Boseker.  That declaration asserts that "[r]ecords returned from [BOP] were processed and accounted for in [the second Boseker declaration] dated April 10, 2013," and "were for the most part released in full."  Dkt. 49-2 at 2.  To the extent documents were not released in full, Boseker asserts in his most recent declaration that any "exceptions [were] noted in the Index of the type connected to incarceration facilities."  *Id*. These explanations, however, are too cryptic to satisfy the demands of FOIA.  The third Boseker declaration appears to be referring to titles in the *Vaughn* index indicating that some of the redacted records come from jails or detention facilities.  *See, e.g.*, Dkt. 36-5 at 8-9 (describing "Guilford County Detention Facility Records," "Roanoke City Jail Records," and "Medical Records Roanoke Jail").  But the declaration does not address whether BOP processed and accounted for all of the records returned from the BOP, and the Court is simply left to guess which, if any, documents were not produced in full, and, to the extent records were withheld in whole or in part, which FOIA exemptions the Department relies upon.  Consequently, the Court must deny summary judgment as to the records that were previously referred to BOP.

In contrast, the declaration submitted by the Marshals Service establishes that the six pages referred to it were released to Plaintiff on May 28, 2009, with third-party identifying information properly redacted under Exemption 7(C).  *See* Dkt. 36-6 ¶ 3; *cf. Plunkett*, 924 F. Supp. 2d at 300-02.  Accordingly, the Court will grant summary judgment with respect to the records that were referred to the Marshals Service.

**5.** *Segregability*

Next, the Court considers whether the Department has met its burden of demonstrating that it produced all "reasonably segregable" responsive information in its supplemental release. *See Plunkett*, 924 F. Supp. 2d at 304 (internal quotation marks omitted). FOIA provides that "[a]ny reasonably segregable portion of [a] record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "While the 'segregability' requirement applies to all documents and all Exemptions in the FOIA," the courts have recognized that "segregation is not required where the 'exempt and nonexempt information are inextricably intertwined, such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value[.]'" *Covington v. McLeod*, 646 F. Supp. 2d 66, 72 (D.D.C. 2009) (quoting *Mays*, 234 F.3d at 1327) (other citation omitted). The government bears "the burden of justifying nondisclosure," *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977), and must "show with reasonable specificity why the documents cannot be further segregated," *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (quotation marks omitted). To carry this burden, the government must provide a "'detailed justification' for [withheld records'] non-segregability," *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead*, 566 F.2d at 261).

For the most part, the second Boseker declaration and accompanying index meet this burden. The declaration asserts that each document was "evaluated to determine if any information could be segregated and released" and that the "documents withheld in their entirety contained no meaningful portions that could be released without destroying the integrity of the document or without identifying a third party individual or confidential informant." Dkt. 36-5

¶ 12.  The *Vaughn* index then establishes that most of the redactions are limited to the names of the individuals whose privacy interest is protected under Exemption 7(C).  *See* Dkt. 36-5 at 7-9. EOUSA also redacted an attorney's handwritten notes on a list of telephone numbers pursuant to Exemption 5, and concluded that a document consisting entirely of an attorney's handwritten notes was not segregable.  *See* Dkt. 36-5 at 9 (Documents 13 and 14).  As to these records, the Court concludes that the Department has met its burden to establish that it released all reasonably segregable information.

      As to one entry, however, the Court concludes that the Department has not made the required showing.  The *Vaughn* index explains that the Department withheld "[p]ortions" of the Danville Police Department search warrants and affidavits (collectively, Document 2 in the *Vaughn* index) because those records identify a confidential informant and the information the informant provided.  Dkt. 36-5 at 7.  The index does not, however, describe what proportion of those records were withheld or otherwise provide sufficient detail for the Court to evaluate whether the redactions were limited, as required, only to exempt or reasonably non-segregable information.  Before the Court can further address the application of Exemption 7(D) to these records, the Department must provide further detail regarding its redactions, including, for example, identifying "what proportion of the information in the document is non-exempt and how that material is dispersed throughout the document."  *Mead*, 566 F.2d at 261.  Absent such information, the Court is unable to address the segregability of the Danville Police Department search warrants and affidavits.

      **6.  In Camera *Review***

      Plaintiff also requests that this Court review *in camera* the withheld records, relying largely on arguments that are discussed elsewhere in this opinion.  In particular, he contends that

the "obvious agency 'bad faith,'" "contrary evidence in the record," and a "'strong public interest' in disclosure" counsel in favor of *in camera* review.  Dkt. 45 at 50-52.  The Court has already concluded that Plaintiff has not put forward evidence supporting his theory that there is "a strong public interest in disclosure," *see supra* at 14-18, and, as discussed below, Plaintiff has also failed to present evidence that EOUSA has acted in bad faith, *see infra* at 24-26.  The Court concludes that with the limitations discussed above, the Department's *Vaughn* index is sufficiently detailed to provide this Court with the information needed to grant summary judgment in favor of the Department without conducting an *in camera* review.  Because this is not a case where the agency's submissions are "insufficiently detailed to permit meaningful review of exemption claims" or where there is "evidence of bad faith on the part of the agency," *see Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996), the Court declines to exercise its discretion to review the disputed documents *in camera*.

## C.  Agency Bad Faith

Finally, throughout his briefs, Plaintiff alleges that EOUSA acted in bad faith.  Most of Plaintiff's allegations of bad faith are discussed, and rejected, above, or were rejected in the Court's prior opinion.  He puts forward two additional contentions that merit only brief discussion.

First, Plaintiff challenges the "accuracy and authenticity" of Exhibit F to the initial Boseker declaration, Dkt. 16-5 at 23.  *See* Dkt. 45 at 9-10, 23.  The Department's Exhibit F is not a responsive record but rather is a letter to Plaintiff from EOUSA regarding the applicable fees for processing his FOIA request.  Plaintiff contends that he never received this letter and that the Department's inclusion of Exhibit F "is nothing more than an attempt . . . to dupe or defraud the court in covering up the fact that they never responded to any of the plaintiff's status requests,

and in support of the arbitrary processing of [his] request, which is linked to the 'Fraud' and illegal cover-up and conspiracy . . . orchestrated by EOUSA and the [USAO/WDVA]."  Dkt. 45 at 9-10; *see also id.* at 23.  Whether Plaintiff in fact received all of the Department's correspondence related to his FOIA request is not material to any issue properly before the Court. Moreover, even if Plaintiff's contention that he did not receive the letter is accepted as true, that fact would not come close to establishing bad faith by EOUSA.

Second, and along the same lines, Plaintiff relies upon a written opinion by a purported expert document examiner, Wendy Carlson, for the proposition that the Department "doctored" another of its exhibits.  Dkt. 45 at 22.  Plaintiff asked Ms. Carson to opine on whether the Department's Exhibit H was a photocopy of the original letter he received in response to his FOIA request, in which EOUSA explained what records it was producing and what it was withholding.  *See* Dkt. 16-5 at 25.  Although the two documents are, in substance, identical, it is apparent on their face that they are not photocopies; rather, they contain minor variations in handwriting and the placement of the date stamp.  Ms. Carson's letter confirms this obvious fact. *See* Dkt 39-1 at 37.  Although Plaintiff contends that these differences show that the government has falsified records, the Department reasonably explains that EOUSA's practice in responding to FOIA requests is "to individually sign and date copies of particular communications and internal documents, rather than photocopy one several times."  Dkt. 49-2 ¶¶ 1-2.  Again, Plaintiff has not come close to establishing bad faith.  *See, e.g.*, *SafeCard*, 926 F.2d at 1202 (noting that an "apparent mix-up" in *Vaughn* index and "a small collection of other technical failings support neither the allegation that the SEC's search procedures were inadequate, nor an inference that it acted in bad faith").

In FOIA cases, "[a]gency affidavits are afforded a 'presumption of good faith' and an adequate affidavit can be rebutted only with evidence that the agency's search was not made in good faith." *Skurow v. Dep't of Homeland Security*, 892 F. Supp. 2d 319, 326-27 (D.D.C. 2012) (quoting *Defenders of Wildlife v. Dep't of the Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004)). None of Plaintiff's arguments about his criminal trial and its aftermath go to whether the Department fulfilled its obligations to search for and to produce relevant documents in response to Plaintiff's FOIA request, and none of his speculative claims about what transpired during and after his criminal trial suffices to undermine the presumption of good faith accorded to the declarations relied upon by the Department.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Department's renewed motion for summary judgment, Dkt. 36, is **GRANTED** in part and **DENIED** in part.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 1, 2015