**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHOINE PLUNKETT<br>*Plaintiff*,<br>v.<br>DEPARTMENT OF JUSTICE,<br>*Defendant*. | Civil Action No. 11-341 (RDM) |

**MEMORANDUM OPINION AND ORDER**

On February 9, 2011, Plaintiff brought this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA" or "the Act"), seeking to compel the Executive Office for United States Attorneys ("EOUSA"), a component of the Department of Justice ("Department"), to disclose records relating to his criminal prosecution and conviction. In February 2013, the Court granted in part and denied in part the Department's first motion for summary judgment and ordered the Department to supplement the record, to process additional records, and to release any remaining, non-exempt records. *See Plunkett v. Dep't of Justice* ("*Plunkett I*"), 924 F. Supp. 2d 289, 307 (D.D.C. 2013). In September 2015, the Court ruled on the Department's second motion for summary judgment, holding that the Department had mostly addressed the previous concerns, but that three issues needed further clarification. *See Plunkett v. Dep't of Justice* ("*Plunkett II*"), 2015 WL 5159489 (D.D.C. Sept. 1, 2015). The Court identified the following remaining questions: (1) whether two binders of material identified in an email were, in fact, reviewed for responsive documents and, if so, what was found; (2) which, if any, of the documents referred to the Bureau of Prisons ("BOP") for review were withheld and, if so, which FOIA exemptions are

applicable; and (3) which portions of Document 2 in the *Vaughn* index were withheld as exempt material. *Id.* at *1.

The Department has filed a third motion for summary judgment addressed to these questions. Dkt 59. The Court concludes that the Department has satisfactorily addressed the first and third questions, but that the Department has not adequately answered the second question. Accordingly, the Department's renewed motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

The full history of the case is familiar to the parties and is explained in-depth in the Court's prior opinions. *See Plunkett I*, 924 F. Supp. 2d at 296–97; *Plunkett II*, 2015 WL 5159489, at *1–3. For present purposes, the Court recounts only those portions of the background relevant to the Department's renewed motion for summary judgment.

Plaintiff was accused of hiring two men to murder Tyree Wimbush "because [Plaintiff] mistakenly thought Wimbush was a confidential informant for local drug investigators." *United States v. Bodkins*, 274 Fed. Appx. 294, 296 (4th Cir. 2008) (per curiam). On April 18, 2008, the Fourth Circuit affirmed Plaintiff's convictions for conspiracy to travel in interstate commerce to commit murder for pecuniary gain, interstate travel to commit murder for pecuniary gain, and a number of other offenses. *Id*. at 295. On May 12, 2008, Plaintiff submitted a FOIA request to EOUSA seeking all records that "make[ ] reference to" or "relate[ ] to" him, including any records "generated and/or retained . . . as a result of the homicide of Tyree Nathaniel Wimbush." Dkt. 1-1 at 2.

In May 2009, EOUSA released some records and withheld others. *Plunkett II*, 2015 WL 5159489, at *2. EOUSA also referred some records to the BOP and to the U.S. Marshals

Service. *Id.* On May 28, 2009, the six pages referred to the Marshals Service were released, with third-party identifying information properly redacted. *Id*. at *11. BOP referred some records back to EOUSA for further processing, and the Department, through EOUSA, ultimately withheld 160 pages of the returned records as "non-responsive/categorically third-party records." *Id*. at *10 (quoting *Plunkett I*, 924 F. Supp. 2d at 297) (citation omitted).

Dissatisfied with the Department's response, Plaintiff filed this civil action in February 2011. Dkt. 1. EOUSA released additional records on June 2, 2011, and March 20, 2013. *Plunkett II*, 2015 WL 5159489, at *2, 6. The matter is now before the Court on the Department's third motion for summary judgment, Dkt. 59, which pertains to the three remaining issues identified by the Court, *see Plunkett II*, 2015 WL 5159489, at *1.

## II. DISCUSSION

### A. Binders

In support of its second motion for summary judgment, the Department submitted a declaration by Jo T. Brooks, the FOIA contact in the U.S. Attorney's Office for the Western District of Virginia, describing the search for responsive records. *See* Dkt. 36-4 ¶ 1. In that declaration, Brooks asserted that on June 26, 2008 she was informed about "several" binders containing "discovery" from Plaintiff's criminal case and that "documents relating to" Plaintiff were "interspersed" in these "three, three-ring binders." *Id.* ¶¶ 6, 14. Attached to the declaration, however, was an email that Brooks sent to EOUSA on June 27, 2008 in which she asserted that she had "received *five* 3[-inch] binders of discovery in which [Plaintiff's] material is interspersed." *Id*. at 10 (emphasis added). When Plaintiff pointed out the discrepancy as to whether two binders had been reviewed, Dkt. 45 at 14, the Department filed a supplemental declaration by Brooks dated January 2014, Dkt. 49-3. In that declaration, Brooks stated, "At this

point in time, I can only attest that the discrepancy noted in my June 27, 2008[,] email was a result of defining all of the three-ring binders present in the boxes of material I had been given[ ] as discovery binders, when[,] in fact, as determined during the February[ ] 2009 search of the files, not all of the binders contained original discovery materials and, as such, were not responsive to [Plaintiff's] request." *Id*. ¶ 5.

In denying in part the Department's second motion for summary judgment, the Court explained that Brooks's January 2014 supplemental declaration "raises at least two questions requiring further clarification[:]"

> First, the declaration asserts that two of the five binders were not responsive because they did not contain "original discovery materials," but Plaintiff's FOIA request was not limited to "discovery materials." Dkt. 16-5 at 20. Missing from the record is any description of what was contained in the two binders or a sufficient explanation for why any such records were either non-responsive or exempt from disclosure. Second, the declaration candidly qualifies the relevant paragraph by noting that "At this point in time, I can only attest" as follows. Dkt. 49-3 ¶ 5. It is unclear, however, whether, at the time she executed her supplemental declaration, Brooks reviewed the two binders to confirm that they did not contain any responsive records or whether she based her testimony on her best recollection of events that had occurred six years earlier.

*Plunkett II*, 2015 WL 5159489, at *6. The Court held that further clarification was required "[b]ecause a reasonable question exists regarding the contents of the two binders and whether they contained any material responsive to Plaintiff's broad FOIA request." *Id.*

The Department has submitted a third declaration by Brooks in support of its third motion for summary judgment. Dkt. 59-4; Dkt. 72-1.[1]  Brooks now explains that she has "earnestly tried

---

[1]   As Plaintiff recognized, Brooks originally failed to sign her second supplemental declaration under penalty of perjury as required by 28 U.S.C. § 1746. *See* Dkt. 64 at 11; Dkt. 59-4. The Court, accordingly, ordered the Department to ensure that all declarations on which it wishes the Court to rely in ruling on the pending motion conform to the requirements of 28 U.S.C. § 1746. Aug. 2, 2016 Min. Order. The Department then resubmitted the Brooks declaration, this time signed under penalty of perjury. Dkt. 72-1.

to visualize the case record [as it existed] on [June 27, 2008]"—the day she said that there were five binders—but has "no recollection of the physical review of [the] record." Dkt. 72-1 ¶ 3. She explains that based on her review of her emails, she knows that she revised her "original accounting of five discovery binders to three discovery binders" on September 17, 2008, when she sent EOUSA an email regarding the history of the file search. *Id.*; *see also* Dkt. 72-1 at 4. Brooks also avers that to prepare her January 2014 supplemental declaration, she located the case record in the file storage room and found four total binders—the three binders which had previously been identified, as well as a fourth binder "which contained court records and grand jury material for an individual other than Anthoine Plunkett [that] was determined not to be responsive to Mr. Plunkett's request." Dkt. 72-1 ¶ 5. Brooks "did not find a fifth three-ring binder in the case record." *Id.*

The Court concludes that in light of this clarification, the June 27, 2008 email fails to cast doubt on the adequacy of the Department's searches for responsive records. The stated purpose of the email was to explain, for purposes of assessing fees, why "it will take longer than two hours to search the files for the documentation that Mr. Plunkett has requested." Dkt. 36-4 at 10. Brooks noted that plaintiff "was one of three defendants in this case and the files were set up under the lead defendant's name" and that plaintiff's "material [was] interspersed" in the binders. *Id.*; *see United States v. Bodkins*, 274 Fed. Appx. 294 (listing Lanny Benjamin Bodkins as lead defendant). Thus, Brooks was "estimating" the amount of time needed "to go through the[ ] files and pull out the documentation pertaining to Mr. Plunkett." Dkt. 36-4 at 10. Given Brooks's attestation that she found only three binders containing responsive material in January 2014, the Court is now persuaded that, although Brooks's recollection is not complete, it is most likely that

there were in fact only three binders containing material potentially responsive to Plaintiff's FOIA request.

Plaintiff now contends that that there are in fact *eight* binders because as of January 27, 2008, Brooks had "already received five 3[-inch] binders," *see* Dkt. 36-4 at 10, and Plaintiff reads Brooks's September 17, 2008 email as stating that Brooks had recently received an additional "three four[-]inch binders" from the Charlottesville branch office, *see* Dkt. 59-4 at 4; Dkt. 64 at 4–8. But a reasonable reading of Brooks's September 17 email is that she had always had three binders containing responsive materials in hand and that it was simply other boxes—not binders—that were newly received from the branch office. Dkt. 59-4 at 4. It is, moreover, hardly surprising that three-inch binders might be mistaken for four-inch binders, or vice versa. And, most importantly, when Brooks's double-checked file storage in January 2014, there were in fact only three binders containing material responsive to Plaintiff's FOIA request. Dkt. 72-1 ¶¶ 3, 5.

An agency's declaration is accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims[.]" *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted). Applying this presumption, the Court concludes that the Department has provided a reasonable explanation for the initial discrepancy in the number of binders purportedly containing responsive records. The Department is now entitled to summary judgment on the adequacy of its searches for responsive records.

**B.     Records Referred to BOP**

The Court found the Department's prior explanations about the disposition of records referred to BOP "too cryptic to satisfy the demands of FOIA." *Plunkett II*, 2015 WL 5159489, at *10. The Department's current response fares no better. The Department submits no further

clarification of what happened to the records referred to BOP, instead simply pointing back to the very materials that the Court found "too cryptic." *Compare id.* at *10, *with* Dkt. 59-2 at 2–3.

In his original declaration, John Bosker, an attorney advisor at EOUSA, explained that "EOUSA has referred records to the U.S. Marshals Service and the BOP," and that "*some* of the latter [were] *returned* [to] EOUSA." Dkt. 16-5 ¶ 21 (emphases added). In its February 20, 2013 decision, the Court explained that this statement failed adequately to address the referrals. *Plunkett I*, 924 F. Supp. 2d at 305. In support of the Department's renewed motion for summary judgment, Bosker then submitted a further declaration, asserting that the records that had been "returned from [BOP] were processed and accounted for," Dkt. 49-2 ¶ 3, but failing to address his prior assertion that only *some* of the records had been returned from BOP. And, now, with no additional factual support, the Department once again merely asserts that the records that were returned to EOUSA "were processed and accounted for." Dkt. 59-2 at 2–3.

From these materials, the Court cannot discern what happened to the materials *not* returned from BOP, and which, if any, exemptions are asserted for those records. The Court still is left to guess about the disposition of the records that BOP did not return to EOUSA. And, if the Department now contends that *all* potentially responsive documents were returned to EOUSA, it needs to submit factual support for that assertion.[2] Consequently, the Court must again deny summary judgment as to those referred records.

---

[2] It is mystifying why, over the course of three motions for summary judgment, the Department has not produced a declaration from BOP explaining the disposition of the referred records, as it did with regard to the records referred to the Marshals Service. *See Plunkett II*, 2015 WL 5159489, at *10–11.


### C. Segregability

In addressing the segregability question, the Court previously could not determine which "[p]ortions" of the Danville Police Department search warrants and affidavits were withheld. *Plunkett II*, 2015 WL 5159489, at *11. The Department has now provided the redacted pages that were released to Plaintiff. Dkt. 59-5. The redacted portions consist of third-party identifying information, which is properly withheld under FOIA exemption 7(C), and information supplied by confidential informants or that could expose the identities of confidential informants, which is properly withheld under exemption 7(D). *See Plunkett II*, 2015 WL 5159489, at *7–9. The Court concludes from its review of the actual pages that all reasonably segregable portions of the Danville Police Department search warrants and affidavits were released to Plaintiff.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Department's renewed motion for summary judgment, Dkt. 59, is **GRANTED** in part and **DENIED** in part. The Department shall supplement the record as to the disposition of records referred to BOP and file a renewed motion for summary judgment, not to exceed five pages, on or before September 16, 2016.

s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: August 24, 2016